1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT
9                   FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11   A.A.M,                                No. 1:25-cv-01514-DC-DMC (HC)

12              Plaintiff,

13        v.                               ORDER GRANTING IN PART
                                           PETITIONER'S MOTION FOR
14   TONYA ANDREWS, et al.,                TEMPORARY RESTRAINING ORDER

15              Defendants.                (Doc. Nos. 6, 11)

16

17        On November 7, 2025, Petitioner A.A.M. filed a petition for writ of habeas corpus under

18   28 U.S.C. § 2241, alleging that he is unlawfully detained by U.S. Immigration and Customs

19   Enforcement ("ICE") in the Golden State Annex Detention Facility in McFarland, California.

20   (Doc. No. 1 at 10.) In his petition, Petitioner requests that the court order Petitioner's immediate

21   release and enjoin Respondents from removing Petitioner to a third country without providing

22   him adequate notice and opportunity to assert a fear-based claim for protection from removal. (*Id.*

23   at 37–38.) This matter is before the court on Petitioner's emergency motion for a temporary

24   restraining order enjoining Respondents from removing Petitioner absent further order of the

25   court, and enjoining Respondents from removing Petitioner to Cameroon without providing him

26   and his counsel meaningful notice and opportunity to assert a fear-based claim. (Doc. No. 6.) For

27   the reasons explained below, the court will grant Petitioner's motion for temporary restraining

28   order.

                                              1

1    **BACKGROUND**

2    **A.    Statutory and Regulatory Framework**

3    When the Government wants to remove a noncitizen,[1] the normal path is through removal

4    proceedings, which require an evidentiary hearing before an immigration judge. 8 U.S.C.

5    § 1229a. In the removal proceeding, the Immigration Judge determines both whether a noncitizen

6    may be removed and to what country or countries he may be removed. 8 C.F.R. § 1240.12(d)

7    ("When a respondent is ordered removed from the United States, the immigration judge shall

8    identify a country, or countries in the alternative, to which the alien's removal may in the first

9    instance be made, pursuant to [8 U.S.C. § 1231(b)(2)].") Section 1231(b)(2) requires that the

10    immigration judge prioritize removal to countries as follows:

11    (1) An alien shall be removed to the country of his choice
(subparagraphs (A) to (C)), unless a condition eliminating that
12    command is satisfied; (2) otherwise he shall be removed to the
country of which he is a citizen (subparagraph (D)), unless a
13    condition eliminating that command is satisfied; (3) otherwise he
shall be removed to a country with which he has a lesser connection
14    (subparagraph (E), clauses (i) to (vi), including the country of his
birth (clause (iv))); or (4) if that is "impracticable, inadvisable, or
15    impossible," he shall be removed to another country whose
government will accept him (subparagraph (E), clause (vii)).
16

17    *Jama v. Immigr. and Customs Enf't*, 543 U.S. 335, 341 (2005) (citing 8 U.S.C. § 1231(b)(2)).

18    If the U.S. Department of Homeland Security (DHS) is "unable to remove the alien to the

19    specified or alternative country or countries, the order of the immigration judge does not limit

20    [DHS's authority] to remove the alien to any other country as permitted by [8 U.S.C. § 1231(b)]."

21    8 C.F.R. § 1240.12(d). Removal to countries identified outside of removal proceedings are

22    referred to as "third country removals." Notwithstanding DHS's authority to effectuate third

23    country removals, noncitizens may not be removed to countries where, as relevant here, their "life

24    or freedom would be threatened in that country because of the alien's race, religion, nationality,

25    membership in a particular social group, or political opinion," (referred to as "withholding of

26    removal"), or where "it is more likely than not that [the noncitizen] would be tortured if removed

27    _____

28    [1] The court prefers the term "noncitizen" to "alien." Because the regulatory language at issue
frequently uses the term "alien," the court will use the terms interchangeably in this order.

2

1  to the proposed country of removal" (referred to as the "Convention Against Torture"). 8 U.S.C. §

2  1231(b)(3)(A); 8 C.F.R. § 208.16. Both withholding of removal and the Convention Against

3  Torture provide mandatory protections from removal to the country or countries where the

4  noncitizen is more than likely to be persecuted or tortured. 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. §

5  208.16.[2]

6          While DHS has the authority to remove a noncitizen to a country not identified in the final

7  removal order, there is no statute or regulation providing a specific procedure to effectuate such a

8  third country removal. *See Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019). On

9  March 30, 2025, DHS issued "Guidance Regarding Third Country Removals" (DHS Third

10  Country Removal Policy) that "clarified DHS policy regarding the removal of aliens with final

11  orders of removal . . . to countries other than those designated for removal in those removal

12  orders (third country removals)." (Doc. No. 1-2 at 1). That policy contains the following

13  procedures:

14          •       If the identified country has "provided diplomatic assurances that aliens removed

15                  from the United States will not be persecuted or tortured" and the "Department of State

16                  believes those assurances to be credible" then DHS may remove the noncitizen "without

17                  need for further procedures." (Doc. No. 1-2 at 1–2.)

18          •       If the United States has not received such assurances, DHS will inform the

19                  noncitizen of removal to the identified country, but "will not affirmatively ask whether the

20                  alien is afraid of being removed to that country." (*Id.* at 2.)

21          •       DHS will "refer any alien who affirmatively states a fear of removal to U.S.

22                  Citizenship and Immigration Services (USCIS) for a screening for eligibility for

23                  protection under [withholding of removal] and the Convention Against Torture" as to the

24                  identified country. This screening generally occurs within 24 hours of referral from DHS.

25                  (*Id.*)

26  ───────────────

27  [2]  Generally, noncitizens may also apply for asylum under 8 U.S.C. § 1158. However, as
discussed below, Petitioner (a Somali immigrant) was not eligible for asylum when he entered the
United States through the southern border pursuant to the Circumvention of Lawful Pathways

28  Final Rule.

- If USCIS determines the noncitizen would "more likely than not be persecuted on a statutorily protected ground or tortured in the country of removal," then the noncitizen will be removed without further process. (*Id.*)

- If USCIS determines the noncitizen does meet this standard, and the noncitizen has not previously appeared before the Immigration Court, "USCIS will refer the matter to the Immigration Court in the first instance." (*Id.*)

- If USCIS determines the noncitizen does meet this standard, and the noncitizen has previously appeared in front of the Immigration Court, USCIS will notify the referring immigration officer, who will inform ICE.[3] ICE "may file a motion to reopen with the Immigration Court or the Board of Immigration Appeals, as appropriate, for further proceedings for the sole purpose of determining eligibility for protection under [withholding of protection] or [Convention Against Torture]," or "choose to designate another country for removal." (*Id.*)

**B.     Factual Background and Procedural History**

Petitioner A.A.M. is a 30-year-old citizen and national of Somalia. (Doc. No. 1 at 7; Doc. No. 2 at ¶ 1.) In May 2024, Petitioner was forced to flee his home in Mogadishu, Somalia, after he was shot in an altercation with members of Al-Shabaab, a "militant terrorist organization closely affiliated with Al-Qaeda." (Doc. No. 1 at 7.) After passing through several countries, Petitioner entered the United States through the southern border on August 15, 2024. (Doc. No. 1 at 8; Doc. No. 2 at ¶¶ 10, 12.) Shortly after entering the United States, Petitioner was arrested by government officers and taken into custody. (Doc. No. 1 at 23; Doc. No. 2 at ¶ 12.) Defendant was brought to the Golden State Annex Detention Facility, where he has been detained ever since. (Doc. No. 1 at 23; Doc. No. 2 ¶ 12.)

At the time Petitioner entered the United States during the Biden Administration, there was a DHS rule in effect called the Circumvention of Lawful Pathways Final Rule, under which individuals who entered the United States without inspection and through a country other than

---

[3] ICE is a division of DHS.

1  their origin country were presumptively ineligible for asylum. (Doc. No. 1 at 12) (citing 88 Fed.

2  Reg. 31314; 8 C.F.R. § 208.33(a)). Because Petitioner is a native of Somalia and entered through

3  the southern border, he was not eligible for asylum. (Doc. No. 1 at 12.)

4          On September 12, 2024, DHS served Petitioner with a Notice to Appear at removal

5  proceedings charging petitioner as removable under the Immigration and Nationality Act

6  ("INA"). (Doc. No. 1 at 23; Doc. No. 2-3 at 2.) On March 19, 2025, an Immigration Judge

7  ordered Petitioner to be removed to Somalia but granted Petitioner withholding of removal under

8  8 U.S.C. § 1231 due to the likelihood that if Petitioner returned, he would be tortured and/or

9  persecuted based on a protected status related to imputed political opinion.[4] (Doc. No. 1 at 23-24;

10  Doc. 2-4.) The deadline to appeal that order expired on April 18, 2025, making the March 19,

11  2025 order final. (Doc. No. 2-4 at 5.)

12          On November 7, 2025, Petitioner filed the pending petition for a writ of habeas corpus

13  raising the following claims: (1) violation of the INA, 8 U.S.C. § 1231(a)(6) based on

14  unreasonable detention; (2) violation of the INA, 8 U.S.C. § 1231(a)(6) based on third country

15  removal procedures; and (3) violation of the Due Process Clause of the Fifth Amendment to the

16  U.S. Constitution based on both unreasonable detention and third country removal procedures.

17  (Doc. No. 1 at 36–37.) Also on November 7, 2025, Petitioner filed a motion for a preliminary

18  injunction seeking an order releasing him from ICE custody pursuant to the Supreme Court's

19  decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. No. 3.) In that motion, Petitioner

20  argues his detention is unlawful because he remains indefinitely detained after the removal period

21  without any foreseeable likelihood of removal to a third country. (*Id.*)

22          While that motion for a preliminary injunction was pending before the court, on

23  November 19, 2025, ICE served Petitioner with a Notice of Removal indicating that Petitioner

24  would be removed to a third country, specifically Cameroon. (Doc. No. 6 at 3; Doc. No. 6-1.)

25  Petitioner informed ICE that he feared for his life or liberty if removed to Cameroon. (Doc. No. 6

26  _____

27  [4] In their opposition, Respondents allege that Petitioner was granted relief from removal under the
Convention Against Torture. (Doc. No. 11 at 3.) However, the Immigration Judge's order states
that relief was granted under Immigration and Naturalization Act § 241(b)(3) [8 U.S.C. §

28  1231(b)(3)], withholding of removal. (Doc. No. 2-4 at 2.)

1    at 14.) The Notice of Removal does not indicate the date by which Petitioner will be removed.

2    However, under the DHS Third Country Removal Policy, Petitioner was subject to removal to

3    Cameroon as soon as 24 hours after receiving the Notice of Removal. (Doc. No. 1-2 at 2.)

4         On November 20, 2025, Petitioner filed the instant motion for a temporary restraining

5    order enjoining Respondents from removing Petitioner absent further order of the court, and

6    enjoining Respondents from removing Petitioner to a third country without providing him and his

7    counsel meaningful notice and opportunity to assert a fear-based claim. (Doc. No. 6.) Also on

8    November 20, 2025, the court issued an order enjoining Respondents from removing Petitioner

9    from the United States or moving Petitioner out of the Eastern District of California pending the

10   court's resolution of Petitioner's motion for a temporary restraining order.[5] (Doc. No. 7.)

11        On Friday, November 21, 2025, a USCIS officer contacted Petitioner's counsel regarding

12   the scheduling of Petitioner's reasonable fear interview in relation to Petitioner's fear-based claim

13   as to removal to Cameroon, which USCIS scheduled for Monday, November 24, 2025. (Doc. No.

14   12-2 at 4.) Petitioner's counsel requested that the interview take place on a later date, as she had

15   not been provided notice of the interview and had not had the opportunity to prepare. (*Id.*) USCIS

16   notified Petitioner's counsel on the morning of November 25, 2025 that Petitioner's interview

17   would begin at 11:00 a.m. that day. (*Id.*) A USCIS officer conducted the reasonable fear interview

18   with Petitioner and Petitioner's counsel appeared at the interview by telephone. (*Id.*)

19        On November 26, 2025, Respondents filed an omnibus motion to dismiss Petitioner's

20   petition for writ of habeas corpus, response to Petitioner's petition for writ of habeas corpus,

21   opposition to Petitioner's motion for preliminary injunction, and opposition to Petitioner's motion

22   for a temporary restraining order.[6] (Doc. No. 11.) Also on November 26, 2025, the USCIS officer

23

24   [5]  The court's November 20, 2025 also set forth a briefing schedule on Petitioner's motion for a preliminary injunction, which remains pending before the court. (Doc. No. 7.)

25   [6] This order addresses only the relief sought in Petitioner's motion for temporary restraining

26   order. As to Respondents' motion to dismiss Petitioner's petition for habeas corpus, a "request for a court order must be made by motion." Fed. R. Civ. P. 7(b)(1). "[A] request for affirmative relief

27   is not proper when raised for the first time in an opposition." *Smith v. Premiere Valet Servs., Inc.*, No. 2:19-cv-09888-CJC-MAA, 2020 WL 7034346, at *14 (C.D. Cal. Aug. 4, 2020); *see also* L.R.

28   230(b) ("Except as otherwise provided in these Rules or as ordered or allowed by Court, all

1    issued a third country screening notice stating that Petitioner did not establish at his credible fear

2    interview that it is more likely than not that he would be persecuted or tortured if removed to

3    Cameroon. (Doc. No. 12-4 at 2.) That screening notice was served on Petitioner's counsel on

4    November 28, 2025. (Doc. No. 12 at 4.) Also on November 28, 2025, Petitioner filed his reply in

5    support of his motion for a temporary restraining order. (Doc. No. 12.)

6         On December 1, 2025, Respondents filed a status report stating that the USCIS officer's

7    screening notice "is the final administrative agency decision in the matter" and that the "sole

8    impediment to petitioner's prompt removal to Cameroon at this juncture is this Court's

9    [November 20, 2025] order." (Doc. No. 14 at 2.)

10                                **LEGAL STANDARD**

11        Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear

12   showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555

13   U.S. 7, 22 (2008) (citation omitted). The standard governing the issuing of a temporary

14   restraining order is "substantially identical" to the standard for issuing a preliminary injunction.

15   *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To

16   obtain either form of injunctive relief, the moving party must show: (1) a likelihood of success on

17   the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary

18   relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction

19   is in the public interest. *Winter*, 555 U.S. at 20 (2008). A plaintiff seeking a temporary restraining

20   order bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196,

21   1201 (9th Cir. 2009).

22        A district court may consider "the parties' pleadings, declarations, affidavits, and exhibits

23   submitted in support of and in opposition to a [motion for injunctive relief]." *Cal. Rifle & Pistol*

24   *Ass'n, Inc. v. Los Angeles Cnty. Sheriff's Dep't*, 745 F. Supp. 3d 1037, 1048 (C.D. Cal. 2024); *see*

25   *also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). Any evidentiary issues "properly

26   go to weight rather than admissibility." *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F.

27   _____

28   motions shall be noticed on the motion calendar of the assigned Judge or Magistrate Judge.")
     Accordingly, Respondents' motion to dismiss is not properly before the court.

1  Supp. 3d 1177, 1185 (C.D. Cal. 2015).

2                                    **DISCUSSION**

3         In his motion for a temporary restraining order, Petitioner seeks an order enjoining

4  Respondents from:

5         (1) removing Petitioner from this District absent express order of this
6             Court;

7         (2) removing [Petitioner] via a third-country deportation without
              providing him and his counsel meaningful notice and opportunity
8             to assert a fear based claim:

9             (a) a minimum of ten (10) days to raise a fear-based claim for
                  protection prior to removal;

10            (b) if [Petitioner] demonstrates reasonable fear of removal to the
                  third country, Respondents must move to reopen
11                [Petitioner's] removal proceedings;

12            (c) if [Petitioner] is not found to have demonstrated a reasonable
                  fear of removal to the third country, Respondents must
13                provide a meaningful opportunity, and a minimum of fifteen
                  (15) days, for [Petitioner] to seek reopening of his
14                immigration proceedings.

15  (Doc. No. 6 at 24.) The court will address the parties' respective arguments as to the *Winter*

16  factors and for the reasons explained below, will grant Petitioner's motion in part and order

17  certain of the preliminary injunctive relief sought by Petitioner.

18  **A.    Likelihood of Success on the Merits**

19         Petitioner bases his motion for a temporary restraining order on his likelihood of success

20  on the merits of his second and third claims that USCIS's third country removal procedures

21  violate the INA, 8 U.S.C. § 1231(a)(6), and his Fifth Amendment due process rights, respectively.

22  (Doc. No. 6 at 17–20.) In opposing that motion, Respondents argue Petitioner is not likely to

23  succeed on his claims, in large part based on Respondents' contention that this court lacks

24  jurisdiction and Petitioner is a class member in a class action currently pending in another district.

25  (Doc. No. 11 at 6–8.) The court will first address the parties' jurisdictional arguments, and then

26  turn to their due process arguments.

27         1.    <u>Jurisdiction</u>

28         In their opposition, Respondents contend that this court lacks jurisdiction to consider this

                                          8

1   petition due to 12 U.S.C. § 1252(g). (Doc. No. 11 at 6.) Section 1252(g) states that "no court shall

2   have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision

3   or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal

4   orders against any alien under this chapter." 12 U.S.C. § 1252(g). Therefore, Respondents

5   contend, the court lacks jurisdiction to consider Petitioner's claims which "arise entirely from

6   actions taken to 'execute' Petitioner's removal order . . . namely, by removing him to a third

7   country pursuant to the [DHS Third Country Removal Policy]." (Doc. No. 11 at 6.)

8          As Petitioner notes in his reply, numerous courts in the Ninth Circuit have addressed this

9   same jurisdictional argument and have found that while it is not within a district court's

10  jurisdiction to enjoin the government's execution of a lawful removal order, it is within the

11  court's jurisdiction to prevent removal absent statutory and constitutional due process

12  requirements. *Y.T.D. v. Andrews*, No. 1:25-cv-01100-JLT-SKO, 2025 WL 2675760, at *5 (E.D.

13  Cal. Sep. 18, 2025) (concluding the court "has habeas jurisdiction over the issues raised here,

14  namely the lawfulness of his continued detention and the process required in relation to third

15  country removal," notwithstanding § 1252(g)) (citing *Jennings v. Rodriguez*, 583 U.S. 282, 294

16  (2018)); *Ortega v. Kaiser*, No. 25-cv-05269-JST, 2025 WL 2243616, at *3 (N.D. Cal. Aug. 6,

17  2025) (holding that § 1252 did not apply because petitioner "does not challenge the execution of

18  the final removal order entered against him, which provided for his removal *only to El Salvador*

19  and deferred his removal there in light of his [Convention Against Torture] claim" rather he

20  "challenges his potential detention or removal to a country *other* than El Salvador, for which

21  there currently exists no final removal order."); *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1006 (W.D.

22  Wash. 2019) ("Petitioner does not challenge the [Immigration Judge ("IJ")'s] determination that

23  he is removable or claim any deficiency in the removal order itself. Rather, he challenges DHS's

24  attempts, *outside* of removal proceedings, to designate Somalia without reopening its proceeding

25  so that an IJ could make the designation in the first instance and/or determine whether petitioner's

26  life or freedom would be threatened in that country.").

27         While this court does not have jurisdiction to review the Immigration Judge's final

28  removal order deeming Petitioner removable but withholding his removal to Somalia, this court

9

1    has jurisdiction to review the issues raised by his habeas petition and the pending motion for a

2    temporary restraining order, specifically his continued detention and Respondents' attempt to

3    remove him to Cameroon, for which there exists no final removal order.

4         2.    The *D.V.D.* Class Action

5         Next, Respondents argue that the court should not consider Petitioner's claim because

6    Petitioner is a class member in a non-opt-out class certified by the District of Massachusetts.

7    (Doc. No. 11 at 8.) Specifically, the court in *D.V.D.* certified the following class:

8              All individuals who have a final removal order issued in proceedings
              under Section 240, 241(a)(5), or 238(b) of the INA (including
9              withholding-only proceedings) who DHS has deported or will deport
              on or after February 18, 2025, to a country (a) not previously
10             designated as the country or alternative country of removal, and (b)
              not identified in writing in the prior proceedings as a country to
11             which the individual would be removed.

12   *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 378 (D. Mass. 2025). After

13   certifying that class, the court found the plaintiffs were likely to succeed in showing that the DHS

14   Third Country Removal Policy constituted "a policy or practice of executing third-country

15   removals without providing notice and a meaningful opportunity to present fear-based claims, and

16   that such policy or practice constitutes a deprivation of procedural due process." *Id.* at 387. Thus,

17   the court issued a preliminary injunction requiring that DHS satisfy certain additional procedures

18   before removing class members to third countries. *Id.* at 392–93. However, the Supreme Court

19   stayed the preliminary injunction order issued in *D.V.D.* pending appeal, *see Dep't of Homeland*

20   *Sec. v. D.V.D.*, --- U.S. ---, 145 S. Ct. 2153 (2025), so that injunctive relief and those additional

21   procedures do not currently apply to Petitioner. Nonetheless, relying on that decision, Petitioner

22   in this case seeks an order from this court imposing the same additional procedures as those

23   ordered by the court in *D.V.D.* (Doc. No. 6 at 24.)

24        Respondents urge the court to "decline to consider the merits of any challenge petitioner

25   might bring to his third country removal" because *D.V.D.* "[c]lass members like petitioner should

26   not get a second bite at the apple through individual habeas actions," and Petitioner's claims

27   relating to third-country removal "are more appropriately resolved in the *D.V.D.* case and

28   [should] not be addressed in this Court." (Doc. No. 11 at 8) (citation omitted). Despite the

10

1    pending *D.V.D.* class action and the Supreme Court's stay of the injunction issued in that case,

2    numerous courts in the Ninth Circuit have issued injunctive relief requiring identical, or

3    substantially similar, third-country removal procedures as those articulated in the *D.V.D.*

4    preliminary injunction. *See, e.g., Vaskayan v. Janecka*, No. 5-25-cv-01475-MRA-AS, 2025 WL

5    2014208, at *9 (C.D. Cal. June 25, 2025); *Esmail v. Noem*, No. 2:25-cv-08325-WLH-RAO, 2025

6    WL 3030589, at *9 (C.D. Cal. Sep. 26, 2025); *Y.T.D. v. Andrews*, No. 1:25-CV-01100-JLT-SKO,

7    at *13 (E.D. Cal. Sep. 18, 2025); *Khan v. Noem*, No. 1:25-cv-014110-EPG-HC, 2025 WL

8    3089352, at *11 (E.D. Cal. Nov. 5, 2025).

9          Moreover, as a court in the Western District of Washington found in rejecting the same

10   argument made by Respondents here, "a district court may not dismiss those allegations of the

11   complaint which go beyond the allegations and relief prayed for in the class action." *Nguyen v.*

12   *Scott*, No. 2:25-cv-01398, 2025 WL 2419288, at *20 (*citing Pride v. Correa*, 719 F.3d 1130,

13   1133 (9th Cir. 2013) (cleaned up). The court in *Nguyen* found that where a class action seeks

14   "systemic reform of" a government policy, while the individual claim seeks "individual claims

15   for injunctive relief related" to the plaintiff's mistreatment resulting from that policy, the

16   individual claim is not barred by the class claim. *Nguyen*, 2025 WL 2419288, at *20 (citing

17   *Pride*, 719 F.3d at 1137 ("Thus, we conclude that where a California prisoner brings an

18   independent claim for injunctive relief solely on his own behalf for specific medical treatment

19   denied to him, [the class action] does not bar the prisoner's claim for injunctive relief.") (citing

20   cases)).

21         Finally, as Petitioner notes, the *D.V.D.* class relates to noncitizens seeking protection

22   under the Convention Against Torture, whereas here, Petitioner seeks relief under both the

23   Convention Against Torture and withholding of removal. (Doc. No. 12 at 11.) Thus, Petitioner's

24   Due Process claim is not identical to the claims at issue in the *D.V.D.* class action.

25         3.    <u>Due Process</u>

26         The Due Process Clause protects persons in the United States from being deprived of life,

27   liberty, or property without due process of law. U.S. Const. amend. V. "It is well established that

28   the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings."

11

1  *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (citation omitted); *see also Zadvydas v. Davis*, 533

2  U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United

3  States, including aliens, whether their presence here is lawful, unlawful, temporary, or

4  permanent.").

5       Courts examine procedural due process claims in two steps. *Berrios v. Albarran*, No. 25-

6  cv-01544-TLN-CSK, 2025 WL 3171140, at *2 (E.D. Cal. Nov. 13, 2025) (citing *Ky. Dep't of*

7  *Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). The first step asks whether a protected liberty

8  interest under the Due Process Clause exists. *Id.* The second step "examines the procedures

9  necessary to ensure any deprivation of that protected liberty interest accords with the

10  Constitution." *Id.*

11       The Due Process Clause applies to noncitizens in the country in connection with removal

12  proceedings, even if their presence is unlawful or temporary. *See Zadvydas*, 533 U.S. at 693;

13  *Andriasian v. Immigr. and Naturalization Servs.*, 180 F.3d 1033, 1041 (9th Cir. 1999) ("Failing to

14  notify individuals who are subject to deportation that they have the right to apply for asylum in

15  the United States and for withholding of deportation to the country to which they will be deported

16  violates both INS regulations and the constitutional right to due process."). This right to due

17  process applies equally to the initial removal determination and determination of removal

18  withholding relief to an identified third country. *Johnson v. Guzman Chavez,* 594 U.S. 523, 557

19  (2021) (Breyer, J., dissenting) ("[A]ll here agree that the aliens are legally entitled to seek []

20  withholding-only relief.").

21       Here, Petitioner contends the DHS Third Country Removal Policy violates his Due

22  Process rights guaranteed by the Fifth Amendment. (Doc. No. 6 at 17–19.) Although Petitioner

23  challenges in his petition all portions of the DHS Third Party Removal Policy on due process

24  grounds, in the time since filing his motion for temporary restraining order, Petitioner has been

25  afforded much of the relief sought by his motion. Specifically, since filing the motion, Petitioner

26  and his counsel were given notice of ICE's intent to remove Petitioner to Cameroon, and given

27  time, at Petitioner's counsel's request, to prepare for the fear-based screening interview with a

28

USCIS agent.[7] (Doc. Nos. 14; 12-1 at 4.) Thus, the only question that remains is whether Petitioner's Due Process right to assert his fear-based defense to removal to Cameroon was satisfied by his screening interview with a USCIS official, who determined that Petitioner had not asserted a viable fear-based claim. (Doc. No. 12-4 at 2.) Respondents have affirmed their position that there is no statutory, regulatory, or Ninth Circuit precedent that requires or permits further review of Petitioner's claim in immigration court or elsewhere, and that Petitioner would be removed without further process if the court were to vacate its order preventing his removal. (Doc. No. 14 at 2.) Petitioner contends that the USCIS screening was insufficient under the Due Process Clause, and requests—consistent with procedures outlined by the court in *D.V.D.*—that Petitioner be afforded the opportunity to file a motion to reopen his immigration claim in front of an immigration judge. (Doc. No. 12 at 3.)

Respondents contend that, because "neither the INA nor FARRA [Foreign Affairs Reform and Restructuring Act] nor any other statute or regulation prescribes a particular process for CAT [Convention Against Torture] [or withholding of removal] claims vis-à-vis third-country removals," it is within DHS's discretion to determine the proper procedures for Petitioner's third country removal. (Doc. No. 11 at 7.) While it is true that DHS has the authority to remove a noncitizen "to any other country as permitted by [8 U.S.C. § 1231(b)]," and that no regulation provides explicit procedures for the third country removal process, DHS "must exercise that authority in the appropriate way." *Wani Site v. Holder*, 656 F.3d 590, 594 (7th Cir. 2011). Specifically, DHS's designation must be permitted by § 1231, and the designation must comport with due process. *Reyes-Melendez v. INS*, 343 F.3d 1001, 1008 (9th Cir. 2003) ("[A] due process violation is not an exercise of discretion.").

Respondents further contend that the DHS Third Country Removal Policy process "is analogous to that provided in expedited removals . . . which the Supreme Court upheld against a

---

[7] As Respondents emphasize in their status update, the process provided to Petitioner was not an intentional deviation from the DHS Third Country Removal Policy but rather resulted from this court's order requiring that Petitioner not be removed before the court ruled on the motion for a temporary restraining order. (Doc. No. 14 at 2) ("The sole impediment to petitioner's prompt removal to Cameroon at this juncture is this Court's minute order.").

1   due-process challenge." (Doc. No. 11 at 7) (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591

2   U.S. 103, 138-141 (2020)). However, in the expedited removal process at issue in *Thuraissigiam*,

3   an asylum officer's "rejection of a credible-fear claim is reviewed by a supervisor and *may then*

4   *be appealed to an immigration judge*." 591 U.S. at 103 (emphasis added). Here, on the other

5   hand, the DHS Third Country Removal Policy does not provide any opportunity for Petitioner to

6   appeal to an immigration judge the USCIS officer's determination that he did not have a credible

7   fear-based claim. (Doc. No. 1-2 at 2.) Respondents have confirmed that Petitioner is not entitled

8   to such independent review under the DHS Third Country Removal Policy, which distinguishes

9   the facts of this case from those in *Thuraissigiam*. (Doc. No. 14 at 2.) Thus, Respondents'

10  reliance on the decision in *Thuraissigiam* is unavailing. Contrary to Respondents' arguments, the

11  court finds Petitioner has a protected liberty interest in having an immigration judge review

12  USCIS's determination on his fear-based claim regarding removal to Cameroon.

13          With step one of the due process analysis satisfied, the court must next determine the

14  procedures necessary to ensure any deprivation of that protected liberty interest accords with the

15  Constitution. To make that determination, the court applies the three-part test established in

16  *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Hoang v. Santa Cruz*, No. 25-cv-02766-JCB-JC,

17  2025 WL 3141857, at *4 n.1 ("The Court follows the Ninth Circuit, which regularly employs

18  *Mathews v. Eldridge* in due process challenges in the immigration context.") (*citing Rodriguez*

19  *Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022)); *Khan*, 2025 WL 3089352, at *5–6

20  (applying the *Mathews* test to third country removal process). The *Mathews* test considers three

21  factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the

22  government's interest. 424 U.S. at 335.

23          Turning to the first *Mathews* factor, Petitioner has a private interest in not being

24  erroneously removed to a third country with which he has no connection, and where he faces

25  potential persecution, torture, and death. (Doc. Nos. 12 at 5; 12-3 at 7.) Further, it is explicitly

26  unlawful for DHS to remove Petitioner to a country where his life or freedom would be

27  threatened. 8 U.S.C. § 1231(b)(3); *Jama,* 543 U.S. 335 at 348 (explaining that individuals who

28  "face persecution or other mistreatment in the country designated" for removal "have a number of

14

available remedies" to "ensur[e] their humane treatment"). Thus, consideration of this factor

favors a finding that Petitioner's private interest is affected by his removal to third country

Cameroon in the absence of an immigration judge's review of USCIS's decision.

The second *Mathews* factor, the risk of erroneous deprivation to Petitioner, also weighs in

Petitioner's favor. As addressed above, Petitioner has submitted expert evidence showing that

Petitioner is likely to be persecuted, tortured, and killed if removed to Cameroon. (Doc. No. 12-3

at 7.) The USCIS officer did not acknowledge or address this evidence whatsoever in determining

that Petitioner did not assert a credible fear-based claim for withholding of removal to Cameroon.

(Doc. No. 12-4.) If an immigration judge does not review USCIS's determination, including the

evidence Petitioner provided, Petitioner will not have the opportunity to present his fear-based

claim to a neutral adjudicator for correction of USCIS's potentially erroneous determination. And

should Petitioner be erroneously removed to Cameroon, there would be no avenue for him to

vindicate his rights in the United States. Accordingly, consideration of this factor also weighs

heavily in Petitioner's favor.

Turning to the third *Mathews* factor, the court acknowledges the government has an

interest in the steady enforcement of its immigration laws, but that interest is mitigated because

the "effort and cost required to provide Petitioner with procedural safeguards is minimal and

indeed was previously provided in his case." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D.

Cal. 2025). Petitioner was statutorily entitled to have his initial withholding claim heard in front

of an immigration judge, and he was provided that opportunity. Respondents present no reason

why it would be substantially burdensome to provide Petitioner that same opportunity as to a third

country with which Petitioner has no connection, and for which Petitioner has presented evidence

of a credible fear-based claim for relief. (Doc. No. 12-3.) Thus, consideration of the third

*Mathews* factor also weights in Petitioner's favor.

On balance, the *Mathews* factors favoring Petitioner show a likelihood of success on the

merits of his due process claim, specifically that due process requires Petitioner be provided an

opportunity to have his fear-based claims for removal to Cameroon considered by an immigration

judge. Because of this, and because Respondents' jurisdictional and class related arguments are

15

1  unavailing, the court finds that Petitioner has established a likelihood of success on the merits of

2  his due process claim as it relates to the process to which he is entitled before removal to third

3  country Cameroon.

4  **B.    Irreparable Harm**

5      It is well established that the deprivation of a constitutional right "unquestionably

6  constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting

7  *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Where, as here, the "alleged deprivation of a

8  constitutional right is involved, most courts hold that no further showing of irreparable injury is

9  necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (*quoting* Wright,

10  Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)); *Baird v. Bonta*, 81 F.4th

11  1036, 1040 (9th Cir. 2023) ("It is well-established that the first factor is especially important

12  when a plaintiff alleges a constitutional violation and injury. If a plaintiff in such a case shows he

13  is likely to prevail on the merits, that showing usually demonstrates he is suffering irreparable

14  harm no matter how brief the violation.")

15      Therefore, the second *Winter* factor weighs in favor of granting Petitioner's request for

16  injunctive relief.

17  **C.    Balance of the Equities and Public Interest**

18      The court now turns to the last two *Winter* factors. The balance of the equities and public

19  interest analyses merge when the government is the opposing party, as is the case here. *See*

20  *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556

21  U.S. 418, 435 (2009)).

22      "In cases implicating removal, 'there is a public interest in preventing [noncitizens] from

23  being wrongfully removed, particularly to countries where they are likely to face substantial

24  harm.'" *Nguyen*, 2025 WL 2419288 at *28 (quoting *Nken*, 556 U.S. at 436). Despite any interest

25  the government may have in promptly executing removal orders, "our system does not permit

26  agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. Dep't of*

27  *Health § Hum. Servs.*, 594 U.S. 758, 766 (2021) (citing *Youngstown Sheet & Tube Co. v. Sawyer*,

28  343 U.S. 579, 582 (1952)).

16

Finally, that Petitioner has shown a likelihood of success on the merits tips the public interest further in his favor. *Riley's Am. Heritage Farms v. Elasser*, 32 F.4th 707, 731 (9th Cir. 2022) (quoting *Melendres*, 695 F.3d at 1002).

Therefore, the third *Winter* factor also weighs in favor of granting Petitioner's request for injunctive relief. Because all three *Winter* factors weigh in Petitioner's favor, the court finds that injunctive relief is warranted.

**D.      Injunctive Relief**

In his motion for temporary restraining order, Petitioner requests an order enjoining Respondents (1) from removing Petitioner from this District absent express order of the court; (2) from removing Petitioner to a third country without providing him notice and opportunity to assert a fear based claim in front of a USCIS agent; and (3) should the USCIS agent determine that Petitioner did not assert a credible fear based claim, from removing Petitioner before he has had a meaningful opportunity, at a minimum of fifteen days, for Petitioner to seek reopening of his immigration proceedings.

As discussed above, Petitioner's first two requests for injunctive relief—enjoining (1) removal of Petitioner from this District; and (2) removal of Petitioner to a third country without providing him notice and opportunity to assert a fear-based claim to USCIS—have been mooted. Likely due to the overlapping timing of briefing on this motion and Petitioner's third country removal proceedings, the parties have not thoroughly addressed his third request for injunctive relief—enjoining removal of Petitioner in the event USCIS determines he does not have a credible fear, unless he is provided a meaningful opportunity to seek reopening of his immigration proceedings in front of an immigration judge following the USCIS officer's determination. This injunctive relief seeking the opportunity to reopen immigration proceedings is identical to relief provided in the *D.V.D.* preliminary injunction. *D.V.D.*, 778 F. Supp. 3d at 394 ("[I]f the alien is not found to have demonstrated 'reasonable fear,' provide meaningful opportunity, and a minimum of 15 days, for that alien to seek to move to reopen immigration proceedings to challenge the potential third-country removal.") The court in *D.V.D.* did not provide extensive analysis for why permitting a noncitizen to move to reopen immigration

17

1    proceedings satisfies the noncitizen's due process right to have his removal claim adjudicated by

2    an independent arbiter. *Id.* at 393 n.49 (explaining that the court provided the fifteen-day time

3    period because "Defendants were unable, unwilling, or incapable of meaningfully engaging in a

4    discussion about what process was required to provide aliens with a meaningful opportunity to

5    contest a finding that their fear was reasonable.") However, in the context of jurisdictional

6    analysis, the court in *D.V.D.* did note that "[i]mmigration courts have nearly unfettered 'discretion

7    to decide whether to grant or deny sua sponte reopening.'" *Id.* at 373 (quoting *Charles v.*

8    *Garland*, 113 F.4th 20, 23 (1st Cir. 2024)). The court also noted that the plaintiffs in that case

9    "provided sworn declarations indicating that their various attempts at reopening proceedings to

10   seek [Convention Against Torture] protections have been denied by [immigration judges]." *Id.*

11   Similarly, in the cases adopting the *D.V.D.* injunctive measures noted above, the courts did not

12   provide extensive analysis as to why a motion to reopen immigration proceedings satisfied the

13   noncitizen's due process right to have his fear-based claim adjudicated before removal to a third

14   country.

15          Several decisions from the Western District of Washington, however, have more

16   thoroughly analyzed the constitutionally proper process by which a noncitizen may seek to

17   adjudicate his fear-based claim before removal to a third country. In *Aden v. Nielsen*, 409 F.

18   Supp. 3d 998 (W.D. Wash 2019) the court found that the noncitizen's right to due process in

19   relation to his removal to a third country "includes the right to a full and fair hearing, an impartial

20   decisionmaker, and evaluation of the merits of his or her particular claim." 409 F. Supp. 3d at

21   1010 (citing *Torres-Aguilar v. INS*, 246 F.3d 1267, 1270 (9th Cir. 2001)). Accordingly, the court

22   in *Aden* found, "[g]iving petitioner an opportunity to file a motion to reopen—a motion which

23   seeks discretionary relief that may be denied without any sort of hearing—is not an adequate

24   substitute for the process that is due in [the third country removal] circumstances." *Id.* Applying

25   that analysis directly to the DHS Third Country Removal Policy, the court in *Nguyen v. Scott*, No.

26   25-cv-01398, 2025 WL 2419288 at *18 (W.D. Wash. Aug. 21, 2025), found the "requirements set

27   forth in *Aden* flow directly from binding Ninth Circuit precedent about due process protections

28   before removal to a third country," "[t]hat Ninth Circuit precedent is binding on this Court," and

1    "the application of that precedent in *Aden* is persuasive." 2025 WL 2419288 at \*18. The court in

2    *Nguyen* therefore issued a preliminary injunction finding that "Petitioner is likely to succeed on

3    his claim that removal to a third country under [the DHS Third Country Removal Policy], without

4    meaningful notice and *reopening of his removal proceedings for a hearing*, would violate due

5    process." *Id.* at 19 (emphasis added).

6        Further, in applying the holdings from *Aden* and *Nguyen*, the court in *Abubaka v. Bondi*,

7    No. 25-cv-01889-RSL, 2025 WL 3204369, at \*6 (W.D. Wash. Nov. 17, 2025) determined "on the

8    merits of petitioner's argument that due process does not allow respondents to 'remove or seek to

9    remove him to a third country without notice and meaningful opportunity to respond in

10   compliance with the statute and due process in reopened removal proceedings.'" The court in

11   *Abubaka* emphasized that even though DHS's Third Country Removal Policy replaced the policy

12   at issue in *Aden*, the "ruling in *Aden* remains persuasive today and therefore this Court adopts its

13   holdings in *Aden* for the purposes of this ruling . . . ." *Id.* at 7; *see also Baltodano v. Bondi*, No.

14   25-cv-1958-RSL, 2025 WL 2987766, at \*4 (granting motion for temporary restraining order

15   enjoining Petitioner's removal to third country "without notice and a meaningful opportunity to

16   respond in compliance with statute and due process in reopened removal proceedings").

17       This court finds these decisions from the Western District of Washington persuasive. Due

18   Process requires that Petitioner receive a full and fair hearing of his fear-based claim in front of a

19   neutral adjudicator. This requirement is not satisfied by simply providing Petitioner the time and

20   opportunity to file a discretionary motion to reopen his immigration proceedings.

21       Thus, the court will grant Petitioner's motion for a temporary restraining order in part and

22   will enjoin Respondents from removing Petitioner to Cameroon until Petitioner has had the

23   opportunity to present his fear-based claim in reopened removal proceedings before an

24   Immigration Judge. *See Brown v. Plata*, 563 U.S. 493, 542 (2011) ("The power of a court of

25   equity to modify a decree of injunctive relief is long-established, broad, and flexible.") (internal

26   citation omitted).

27   **E.    Bond**

28       Federal Rule of Civil Procedure 65(c) permits a court to grant preliminary injunctive relief

19

1    'only if the movant gives security in an amount that the court considers proper to pay the costs

2    and damages sustained by any party found to have been wrongfully enjoined or restrained.'"

3    *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting Fed. R. Civ. P. 65(c)).

4    "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion

5    as to the amount of security required, if any.'" *Id.* (quoting *Jorgensen v. Cassiday*, 320 F.3d 906,

6    919 (9th Cir. 2003)). "In particular, '[t]he district court may dispense with the filing of a bond

7    when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or

8    her conduct.'" *Johnson*, 572 F.3d at 1086 (quoting *Jorgensen*, 320 F.3d at 919). Petitioner

9    requests that the court not require him to post security because there is no quantifiable harm to

10   Respondents, and due to Petitioner's prolonged detention, he is indigent. (Doc. No. 11 at 23.)

11        The court finds that no security is required here. Courts regularly waive security in cases

12   like this one. *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Lepe v. Andrews*, No. 25-cv-

13   01163-KES-SKO, 2025 WL 2716910, at *10 (E.D. Cal. Sep. 23, 2025); *Pinchi v. Noem*, No. 25-

14   cv-05632- RMI-RFL, 2025 WL 1853763, at *4 (N.D. Cal. Jul. 4, 2025).

## CONCLUSION

16        For the reasons explained above,

17        1.    Petitioner A.A.M.'s motion for temporary restraining order (Doc. No. 6) is

18              GRANTED IN PART as follows:

19              a.    The court temporarily enjoins respondents and their officers, agents,

20                    servants, employees, and persons acting on their behalf in concert or in

21                    participation with them, from removing Petitioner to Cameroon without

22                    first allowing him a meaningful opportunity to be heard on his fear based

23                    claim before an immigration judge in compliance with due process; and

24   /////

25   /////

26   /////

27   /////

28   /////

1

       b.       Respondents and their officers, agents, servants, employees, and persons

2

             acting on their behalf in concert or in participation with them, are

3

             temporarily enjoined from removing or deporting Petitioner to a third

4

             country, including Cameroon, absent court order to the contrary.

5

6

7       IT IS SO ORDERED.

8   Dated:   __**December 4, 2025**__

                                           Dena Coggins

9                                       United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28