1
2
3
4
5
6
7

8                        UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   A.A.M.,                                    No. 1:25-cv-01514-DC-DMC (HC)

12                 Petitioner,

13        v.                                     ORDER GRANTING IN PART
                                                 PETITIONER'S MOTION FOR
14   TONYA ANDREWS, et al.,                      PRELIMINARY INJUNCTION

15                 Respondents.                  (Doc. No. 3)

16

17

18        On November 7, 2025, Petitioner A.A.M. filed a petition for writ of habeas corpus under

19   28 U.S.C. § 2241, alleging that he is unlawfully detained by U.S. Immigration and Customs

20   Enforcement ("ICE") in the Golden State Annex Detention Facility in McFarland, California.

21   (Doc. No. 1 at 10.) On the same day, Petitioner filed the pending motion for a preliminary

22   injunction requiring Respondents to immediately release Petitioner from detainment and

23   enjoining Respondents from removing Petitioner to a third country before providing him notice

24   and opportunity to present a fear-based defense from removal to the identified third country.

25   (Doc. No. 3 at 33-34.) For the reasons explained below, the court will grant Petitioner's motion

26   for a preliminary injunction in part.

27   /////

28   /////

                                                1

**BACKGROUND**

**A.      Factual Background and Procedural History**

Petitioner A.A.M. is a 30-year-old citizen and national of Somalia. (Doc. Nos. 1 at 7; 2 at ¶ 1.) In May 2024, Petitioner was forced to flee his home in Mogadishu, Somalia, after he was shot in an altercation with members of Al-Shabaab, a "militant terrorist organization closely affiliated with Al-Qaeda." (Doc. No. 1 at 7.) After passing through several countries, Petitioner entered the United States through the southern border on August 15, 2024. (Doc. Nos. 1 at 8; 2 at ¶¶ 10, 12.) Shortly after entering the United States, Petitioner was arrested by government officers and taken into custody. (Doc. Nos. 1 at 23; 2 at ¶ 12.) Defendant was brought to the Golden State Annex Detention Facility, where he has been detained ever since. (Doc. Nos. 1 at 23; 2 at ¶ 12.)

At the time Petitioner entered the United States during the Biden Administration, there was a Department of Homeland Security ("DHS") rule in effect called the Circumvention of Lawful Pathways Final Rule, under which individuals who entered the United States without inspection and through a country other than their origin country were presumptively ineligible for asylum. (Doc. No. 1 at 12) (citing 88 Fed. Reg. 31314; 8 C.F.R. § 208.33(a)). Because Petitioner is a native of Somalia and entered through the southern border, he was not eligible for asylum. (Doc. No. 1 at 12.)

On September 12, 2024, DHS served Petitioner with a Notice to Appear at removal proceedings charging petitioner as removable under the Immigration and Nationality Act ("INA"). (Doc. Nos. 1 at 23; 2-3 at 2.) On March 19, 2025, an immigration judge ordered Petitioner to be removed to Somalia but granted Petitioner withholding of removal under 8 U.S.C. § 1231 due to the likelihood that if Petitioner returned, he would be tortured and/or persecuted based on a protected status related to imputed political opinion.[1] (Doc. Nos. 1 at 23–24; 2-4.) The

/////

---

[1] In their opposition, Respondents allege that Petitioner was granted relief from removal under the Convention Against Torture. (Doc. No. 11 at 3.) However, the immigration judge's order states that relief was granted under Immigration and Naturalization Act § 241(b)(3) [8 U.S.C. § 1231(b)(3)], withholding of removal. (Doc. No. 2-4 at 2.)

1    deadline to appeal that order expired on April 18, 2025, making the March 19, 2025, order final.[2]

2    (Doc. No. 2-4 at 5.)

3        On November 7, 2025, Petitioner filed his petition for a writ of habeas corpus raising the

4    following claims: (1) violation of the Immigration and Naturalization Act ("INA"), 8 U.S.C. §

5    1231(a)(6) based on unreasonable detention; (2) violation of the INA, 8 U.S.C. § 1231(a)(6)

6    based on third country removal procedures; and (3) violation of the Due Process Clause of the

7    Fifth Amendment to the U.S. Constitution based on both unreasonable detention and third country

8    removal procedures. (Doc. No. 1 at 36–37.) Also on November 7, 2025, Petitioner filed the

9    pending motion for a preliminary injunction requiring his release from ICE custody pursuant to

10    the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001), and requiring that he be

11    provided notice and opportunity to present a fear-based claim for relief before his removal to a

12    third country. (Doc. No. 3.) In that motion, Petitioner argues his detention is unlawful because he

13    remains indefinitely detained after the removal period without any foreseeable likelihood of

14    removal to a third country. (*Id.*)

15        While the motion for a preliminary injunction was pending before the court, on November

16    19, 2025, ICE served Petitioner with a Notice of Removal indicating that Petitioner would be

17    removed to a third country, specifically Cameroon. (Doc. Nos. 6 at 3; 6-1.) Petitioner informed

18    ICE that he feared for his life or liberty if removed to Cameroon. (Doc. No. 6 at 14.)

19        On November 20, 2025, Petitioner filed a motion for a temporary restraining order

20    enjoining Respondents from removing Petitioner absent further order of the court, and enjoining

21    Respondents from removing Petitioner to a third country without providing him and his counsel

22    meaningful notice and opportunity to assert a fear-based claim. (Doc. No. 6.)

23

24    [2] In their opposition, Respondents allege that Petitioner's "order of removal [] became final on
      March 19, 2025, when an immigration judge ordered him removed and neither party appealed."

25    (Doc. No. 11 at 4.) An order of removal made by an immigration judge at the conclusion of
      proceedings under section 240 becomes final "[u]pon expiration of the time allotted for an appeal

26    if the respondent does not file an appeal within that time." 8 C.F.R. § 1241.1(c). Here, the notice
      of removal required that any appeal be filed by April 18, 2025. (Doc. No. 2-4 at 5.) Thus, the

27    order of removal became final on April 18, 2025. (Doc. No. 1 at ¶ 51) ("On April 18, 2025,
      [Petitioner's] withholding of removal order became final because the appeal period expired.").

28

1    On November 26, 2025, Respondents filed an omnibus motion to dismiss Petitioner's

2    petition for writ of habeas corpus, response to Petitioner's petition for writ of habeas corpus,

3    opposition to Petitioner's motion for preliminary injunction, and opposition to Petitioner's motion

4    for a temporary restraining order.[3] (Doc. No. 11.) On December 4, 2025, the court issued an order

5    granting in part Petitioner's motion for a temporary restraining order enjoining Respondents from

6    "removing Petitioner to Cameroon without first allowing him a meaningful opportunity to be

7    heard on his fear based claim before an immigration judge in compliance with due process" and

8    from "removing or deporting Petitioner to a third country, including Cameroon, absent court

9    order to the contrary." (Doc. No. 17 at 20–21.)

10    On December 15, 2025, Petitioner timely filed a reply in support of his motion for

11    preliminary injunction.[4]

12    ## LEGAL STANDARD

13    Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear

14    showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555

15    U.S. 7, 22 (2008) (citation omitted). To obtain a preliminary injunction, the moving party must

16    _____

17    [3] This order addresses only the relief sought in Petitioner's motion for a preliminary injunction.
18    As to Respondents' motion to dismiss Petitioner's habeas petition, a "request for a court order
     must be made by motion." Fed. R. Civ. P. 7(b)(1). "[A] request for affirmative relief is not proper
     when raised for the first time in an opposition." *Smith v. Premiere Valet Servs., Inc.*, No. 2:19-cv-
19    09888-CJC-MAA, 2020 WL 7034346, at *14 (C.D. Cal. Aug. 4, 2020); *see also* L.R. 230(b)
     ("Except as otherwise provided in these Rules or as ordered or allowed by Court, all motions shall
20    be noticed on the motion calendar of the assigned Judge or Magistrate Judge.") Accordingly,
     Respondents' motion to dismiss is not properly before the court.
21

22    [4] In his reply, Petitioner requests that the court (1) adjudicate his third-country due process claims
     on a permanent, merits basis in accord with the court's order granting Petitioner's motion for
23    temporary restraining order, and (2) defer resolving his *Zadvydas* claims for release until after an
     immigration judge reviews Petitioner's fear-based claim for relief from removal to Cameroon.
24    (Doc. No. 18 at 2–3.) The court sees no reason to partially resolve Petitioner's claim on the merits
     at this juncture, and therefore this order only addresses the relief sought in Petitioner's motion for
25    a preliminary injunction. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 ("[I]t is generally
     inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on
26    the merits" and before the court issues such an order, "the parties should normally receive clear
     and unambiguous notice of the court's intent to consolidate the trial and the hearing either before
27    the hearing commences or at a time which will still afford the parties a full opportunity to present
     their respective cases.") (citations omitted).
28

1    show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving

2    party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the

3    moving party; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20 (2008). A

4    plaintiff seeking a preliminary injunction bears the burden of proving these elements. *Klein v.*

5    *City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009).

6       A district court may consider "the parties' pleadings, declarations, affidavits, and exhibits

7    submitted in support of and in opposition to the [motion for injunctive relief]." *Cal. Rifle & Pistol*

8    *Ass'n, Inc. v. L.A. Cnty. Sheriff's Dep't*, 745 F. Supp. 3d 1037, 1048 (C.D. Cal. 2024); *see also*

9    *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). Any evidentiary issues "properly go

10   to weight rather than admissibility." *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F.

11   Supp. 3d 1177, 1185 (C.D. Cal. 2015).

12                                  **ANALYSIS**

13   **A.**      **Likelihood of Success on the Merits**

14           1.      <u>*Zadvydas* Release</u>

15       After a noncitizen[5] is ordered removed, ICE "shall remove the alien from the United

16   States within a period of 90 days . . . ." (the "removal period"). 8 U.S.C. § 1231(a)(1)(A). The

17   removal period begins, as relevant here, on the "date the order of removal becomes

18   administratively final." *Id.* § 1231(a)(1)(B)(i). ICE is required to detain the noncitizen during the

19   removal period. *Id.* § 1231(a)(2). If the noncitizen is not removed during the removal period, ICE

20   "may" continue to detain the noncitizen after the removal period if he falls into certain categories,

21   including that he entered "the United States without being admitted or paroled," or arrived "in the

22   United States at any time or place other than as designated by the Attorney General." *Id.* §§

23   1231(a)(6), 1182(a)(6)(A)(i).

24       Although there is no explicit statutory limit to the period for which a noncitizen may be

25   detained following the removal period, in *Zadvydas* the Supreme Court noted that a "statute

26

---

27   [5] This opinion uses the term "noncitizen" as equivalent to the statutory term "alien," in keeping
     with recent preferred nomenclature. *Avilez v. Garland*, 69 F.4th 525, 527 n.1 (9th Cir. 2023)

28   (collecting cases).

1  permitting indefinite detention of an alien would raise a serious constitutional problem" under the

2  Fifth Amendment Due Process Clause. *Zadvydas*, 533 U.S. at 690. Accordingly, the Supreme

3  Court held that after a presumptively reasonable six-month period of post-removal period

4  detention, a noncitizen must be released if he demonstrates that there is "good reason to believe

5  there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701.

6       Here, in his motion for a preliminary injunction, Petitioner contends that his continued

7  detention is unconstitutional under the standard established in *Zadvydas* because his removal is

8  not reasonably foreseeable. (Doc. No. 3 at 23–28.) Petitioner therefore seeks an order requiring

9  Petitioner's immediate release subject to any supervisory conditions that the court deems

10 appropriate. (*Id.* at 33.) Petitioner argues that he must be released under *Zadvydas* because there

11 is no significant likelihood that he will be removed in the reasonably foreseeable future. (*Id.* at

12 25.) Petitioner contends that "it is simply unlikely that ICE can successfully remove a non-citizen

13 with withholding relief like [Petitioner] to a third country." (*Id.*) Petitioner notes that, at the time

14 he filed the motion for preliminary injunction, ICE "provided no formal written notice or

15 evidence of any efforts to remove Petitioner."[6] (*Id.*) Finally, Petitioner argues that, should a third

16 country for removal be identified, Petitioner "may likely succeed on a fear-based claim in seeking

17 withholding of removal relief as to that third country." (*Id.*)

18       In their opposition, Respondents argue that the government has met its burden of

19 demonstrating "a significant likelihood of removal in the reasonably foreseeable future" by

20 providing Petitioner's Notice of Removal to Cameroon. (Doc. No. 11 at 4) (citing *Zadvydas*, 533

21 U.S. at 701). Respondents further contend that because the delay in petitioner's removal is

22 attributable to his manifestation of fear of removal to a third country, there is no evidence of the

23 type of undue or bad faith delay to removal that would raise the constitutional concerns addressed

24 by the Supreme Court in *Zadvydas*. (*Id.*) Finally, Respondents assert that if they determine that

25 Petitioner cannot be removed to Cameroon, Respondents will "identif[y] another viable third

26 country option" for removal. (Doc. No. 11 at 3.)

27

28

[6] As noted above, Respondents served Petitioner with a Notice of Removal to Cameroon on November 19, 2025—after Petitioner had filed the pending motion on November 7, 2025.

1        In evaluating the parties' respective arguments, the court finds the Ninth Circuit's decision

2    in *Prieto-Romero v. Clark*, 534 F.3d 1053 (9th Cir. 2008), a case cited by Respondents in their

3    opposition (Doc. No. 11 at 4 n.3), to be instructive. The petitioner in *Prieto-Romero* filed a

4    habeas petition requesting his immediate relief from ICE custody under *Zadvydas* because he had

5    been detained by ICE for over three years. 534 F.3d at 1062. During that period, petitioner had

6    "been found removable by both the [immigration judge] and the [Board of Immigration Appeals],

7    but [he] ha[d] sought judicial relief from that removal order, thereby delaying his deportation." *Id.*

8    at 1064. The court reasoned that, although petitioner's detainment was lengthy, it did not violate

9    the "basic purpose" of immigration detention, which is "'assuring the alien's presence at

10    removal.'" *Id.* at 1063 (quoting *Zadvydas*, 533 U.S. at 699). Instead, the court found that

11    petitioner "foreseeably remains *capable* of being removed—even if it has not yet finally been

12    determined that he *should be* removed—and so the government retains an interest in assuring his

13    presence at removal." *Id.* at 1064. The court further noted the judicial review of petitioner's

14    removal was "subject to strict procedural rules" and those rules were "satisfactory assurance that

15    [petitioner's] petition for review will be resolved with reasonable expedition," such that his

16    detainment was not indefinite. *Id.* at 1064–65 (citation omitted).

17        Here, as in *Prieto-Romero*, Petitioner has been ordered removed to Cameroon and has

18    sought judicial review of the procedures by which that order was made. Thus, as in *Prieto-*

19    *Romero*, his detention is not indefinite, and the procedural rules of this court's review of

20    Petitioner's habeas petition ensure that the review will be resolved with reasonable expedition.

21    Thus, the court finds that Petitioner has not demonstrated a likelihood of success on the merits of

22    his claim requesting his release from detention under *Zadvydas*, and for that reason, the court will

23    deny Petitioner's motion for a preliminary injunction requiring his immediate release. However,

24    the court will deny the motion without prejudice such that Petitioner may file a renewed motion if

25    he is not removed to Cameroon and DHS does not expeditiously identify an alternative country

26    for removal.

27    /////

28    /////

7

2.    <u>Third Country Removal</u>

The court analyzed the statutory and regulatory framework governing third country removal procedures in its December 4, 2025 order granting Petitioner's motion for a temporary restraining order. (Doc. No. 17 at 2–4.) The court incorporates that analysis by reference herein. In that order, the court enjoined Respondents "from removing Petitioner to Cameroon without first allowing him a meaningful opportunity to be heard on his fear-based claim before an immigration judge in compliance with due process," because "Due Process requires that Petitioner receive a full and fair hearing of his fear-based claim in front of a neutral adjudicator." (Doc. No. 17 at 19, 20.) Additionally, the court found that Petitioner's request for a minimum of ten days to raise a fear-based claim had been rendered moot by his assertion of a fear-based claim for protection from removal to Cameroon and by USCIS conducting an interview of Petitioner regarding his fear on November 25, 2025. (Doc. Nos. 17 at 17; 11 at 3.) Further, because that order addressed only the relief sought by the motion for temporary restraining order, which pertained to removal to Cameroon, the court did not rule on Petitioner's request that this same injunctive relief be applied to all perspective third countries (Doc. No. 17 at 6 n.6)—a request that is now before the court.

Specifically, in his motion for a preliminary injunction, Petitioner seeks relief as to all third countries and requests an order:

> [E]njoin[ing] Respondents from removing [Petitioner] via a third-country deportation without providing him and his counsel meaningful notice and opportunity to assert a fear-based claim:
>
> (a) a minimum of ten (10) days to raise a fear-based claim for protection prior to removal;
>
> (b) if [Petitioner] demonstrates reasonable fear of removal to the third country, Respondents must move to reopen [Petitioner's] removal proceedings;
>
> (c) if [Petitioner] is not found to have demonstrated a reasonable fear of removal to the third country, Respondents must provide a meaningful opportunity, and a minimum of fifteen (15) days, for [Petitioner] to seek reopening of his immigration proceedings.

(Doc. No. 3 at 34–35.)

In other words, Petitioner essentially requests that the same relief provided in the court's

8

1  order granting Petitioner's motion for temporary restraining order, including the initial

2  opportunity to assert a fear-based claim that the court found moot in that order, be applied to all

3  third countries that Respondents may identify for Petitioner's removal. (Doc. No. 3 at 15.)

4  Petitioner notes that "an increasing number of courts across the country have enjoined the

5  Government from effectuating unlawful third-country removals without adhering to mandatory

6  statutory and constitutional protections." (*Id.*) Petitioner further notes that these courts have based

7  their injunctive relief on the preliminary injunction granted in *D.V.D. v. U.S. Dep't of Homeland*

8  *Sec.*, 778 F. Supp. 3d 355 (D. Mass. 2025). In *D.V.D.*, the court certified a class consisting of:

9
10   All individuals who have a final removal order issued in proceedings
     under Section 240, 241(a)(5), or 238(b) of the INA (including
     withholding-only proceedings) who DHS has deported or will deport
11   on or after February 18, 2025, to a country (a) not previously
     designated as the country or alternative country of removal, and (b)
     not identified in writing in the prior proceedings as a country to
12   which the individual would be removed.

13  778 F. Supp. 3d at 378. After certifying that class, the court found that plaintiffs were likely to

14  succeed in showing that the DHS Third Country Removal Policy constituted a "policy or practice

15  of executing third-country removals without providing notice and a meaningful opportunity to

16  present fear-based claims, and that such policy or practice constitutes a deprivation of procedural

17  due process." *Id.* at 387. Thus, the court issued a preliminary injunction requiring that DHS

18  satisfy certain third country removal procedures, *id.* at 392–93, which are the same procedures

19  Petitioner requests this court require in a preliminary injunction issued in this case.[7]

20        In their opposition, Respondents argue that injunctive relief is not warranted because

21  Congress delegated the authority to determine third-country removal procedures to the Executive

22
23  [7] The Supreme Court stayed the *D.V.D.* preliminary injunction pending appeal, *see Dep't of
    Homeland Sec. v. D.V.D.*, --- U.S. ---, 145 S. Ct. 2153 (2025), so that injunctive relief and those
    additional procedures do not currently apply to Petitioner. Despite the pending *D.V.D.* class
24  action and the Supreme Court's stay of the injunction issued in that case, numerous courts in the
    Ninth Circuit have issued injunctive relief requiring identical, or substantially similar, third-
25  country removal procedures as those articulated in the *D.V.D.* preliminary injunction. *See, e.g.,
    Vaskayan v. Janecka*, No. 5-25-cv-01475-MRA-AS, 2025 WL 2014208, at *9 (C.D. Cal. June 25,
26  2025); *Esmail v. Noem*, No. 2:25-cv-08325-WLH-RAO, 2025 WL 3030589, at *9 (C.D. Cal. Sep.
    26, 2025); *Y.T.D. v. Andrews*, No. 1:25-CV-01100-JLT-SKO, 2025 WL 2675760, at *13 (E.D.
27  Cal. Sep. 18, 2025); *Khan v. Noem*, No. 1:25-cv-014110-EPG-HC, 2025 WL 3089352, at *11
    (E.D. Cal. Nov. 5, 2025).
28

Branch. (Doc. No. 11 at 5.) However, as the court found in granting Petitioner's motion for a temporary restraining order, "a due process violation is not an exercise of discretion." (Doc. No. 17 at 13) (quoting *Reyes-Melendez v. INS*, 343 F.3d 1001, 1008 (9th Cir. 2003)). Respondents do not address why the relief provided to Petitioner relating to his removal proceedings to Cameroon should not be applied to other third-countries that Respondents may identify if Petitioner is not removed to Cameroon. Further, Respondents emphasize that if Petitioner is not removed to Cameroon, they intend to identify an alternative third country for his removal. (Doc. No. 11 at 1) (stating that if Petitioner cannot be removed to Cameroon, "DHS will find another viable third country alternative"). Thus, Respondents concede that Petitioner's potential third-country removal to a country other than Cameroon in accordance with the DHS Third Country Removal Policy is not speculative. *Bates v. U.S. Parcel Serv., Inc.*, 511 F.3d 974, 986 (9th Cir. 2007) ("Where, as here, 'the harm alleged is directly traceable to a written policy . . . there is an implicit likelihood of its repetition in the immediate future.'") (quoting *Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001)); *Esmail*, 2025 WL 3030589 at *5 ("The Court is satisfied that, as a noncitizen with a removal order—who is, therefore, inherently subject to the policies articulated in the [DHS Third Country Removal Policy]—Petitioner has sufficiently 'demonstrated that he is realistically threatened by a repetition of the violation' at issue.") (quoting *Melendres v. Arpaio*, 695 F.3d 990, 997 (9th Cir. 2012)).

Thus, the court finds that, for the same reasons that Petitioner was likely to succeed on the merits of his third-country removal claims as it pertains to Cameroon, Petitioner is likely to succeed on the merits of his third-country removal claims as it pertains to any alternative third country that Respondents may identify.

**B.    Irreparable Harm**

It is well established that the deprivation of a constitutional right "unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Where, as here, the "alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (*quoting* Wright,

10

1  Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)); *Baird v. Bonta*, 81 F.4th

2  1036, 1040 (9th Cir. 2023) ("It is well-established that the first factor is especially important

3  when a plaintiff alleges a constitutional violation and injury. If a plaintiff in such a case shows he

4  is likely to prevail on the merits, that showing usually demonstrates he is suffering irreparable

5  harm no matter how brief the violation.")

6      Therefore, the second *Winter* factor weighs in favor of granting Petitioner's request for

7  injunctive relief.

8  **C.      Balance of the Equities and Public Interest**

9      The court now turns to the last two *Winter* factors. The balance of the equities and public

10  interest analyses merge when the government is the opposing party, as is the case here. *See*

11  *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556

12  U.S. 418, 435 (2009)).

13      "In cases implicating removal, 'there is a public interest in preventing [noncitizens] from

14  being wrongfully removed, particularly to countries where they are likely to face substantial

15  harm.'" *Nguyen v. Scott*, No. 2:25-cv-01398, 2025 WL 2419288, at *28 (W.D. Wash. Aug. 21,

16  2025) (quoting *Nken*, 556 U.S. at 436). Despite any interest the government may have in

17  promptly executing removal orders, "our system does not permit agencies to act unlawfully even

18  in pursuit of desirable ends." *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S.

19  758, 766 (2021) (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582 (1952)).

20      Finally, that Petitioner has shown a likelihood of success on the merits tips the public

21  interest further in his favor. *Riley's Am. Heritage Farms v. Elasser*, 32 F.4th 707, 731 (9th Cir.

22  2022) (quoting *Melendres*, 695 F.3d at 1002).

23      Therefore, the third and fourth *Winter* factors also weigh in favor of granting Petitioner's

24  request for injunctive relief. Because all four *Winter* factors weigh in Petitioner's favor, the court

25  finds that injunctive relief is warranted.

26  **D.      Injunctive Relief**

27      As discussed at length in the court's order granting Petitioner's motion for a temporary

28  restraining order, the court agrees with several courts in the Western District of Washington that

have found that due process requires not only that a noncitizen be provided the opportunity to move to reopen immigration proceedings to assert a fear-based defense to removal to a third country, but that the noncitizen "receive a full and fair hearing of his fear-based claim in front of a neutral adjudicator," i.e. an immigration judge. (Doc. No. 17 at 19.) Respondents provide no reason why the injunctive relief provided as to removal proceedings to Cameroon should not apply to any other third-country identified by Respondents. (Doc. No. 11.) Thus, the court will grant Petitioner's request for injunctive relief requiring that Respondents provide Petitioner notice and opportunity to assert a fear-based claim for relief from removal to any third-country identified by Respondents, and that Petitioner's fear-based claim for relief from removal to the third-country, if any, is heard by an immigration judge in reopened removal proceedings.

**E.    Bond**

Federal Rule of Civil Procedure 65(c) permits a court to grant preliminary injunctive relief 'only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting Fed. R. Civ. P. 65(c)). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'" *Id.* (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, '[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" *Johnson*, 572 F.3d at 1086 (quoting *Jorgensen*, 320 F.3d at 919). Petitioner requests that the court not require him to post security because there is no quantifiable harm to Respondents, and due to Petitioner's prolonged detention, he is indigent. (Doc. No. 3 at 33.)

The court finds that no security is required here. Courts regularly waive security in cases like this one. *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Lepe v. Andrews*, No. 25-cv-01163-KES-SKO, 2025 WL 2716910, at *10 (E.D. Cal. Sep. 23, 2025); *Pinchi v. Noem*, No. 25-cv-05632- RMI-RFL, 2025 WL 1853763, at *4 (N.D. Cal. Jul. 4, 2025).

### CONCLUSION

For the reasons explained above,

12

1.    Petitioner A.A.M.'s motion for a preliminary injunction (Doc. No. 3) is

GRANTED IN PART as follows:

    a.    Respondents and their officers, agents, servants, employees, and persons

acting on their behalf in concert or in participation with them, are enjoined

from removing Petitioner via a third-country deportation to any country,

including, but not limited to Cameroon, without providing him and his

counsel meaningful notice and opportunity to assert a fear-based claim for

relief from removal:

        i.    A minimum of ten (10) days to raise a fear-based claim for relief

from removal to the identified country;

        ii.    If Petitioner does assert a fear-based claim for relief from removal,

Petitioner may not be removed to the third country without first

providing him a meaningful opportunity to be heard on his fear-

based claim before an immigration judge in compliance with due

process; and

2.    This matter is referred to the assigned magistrate judge for further proceedings.


IT IS SO ORDERED.

Dated:   **December 18, 2025**

Dena Coggins
United States District Judge

13