**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| A.A.M., | No.  1:25-CV-01514-DC-DMC (HC) |
| Petitioner, | |
| | ORDER |
| v. | |
| | And |
| TONYA ANDREWS et. al., | |
| | AMENDED FINDINGS AND RECOMMENDATIONS |
| Respondents. | |

Petitioner, an immigration detainee proceeding with retained counsel, brings this petition for a writ of habeas corpus under 28 U.S.C. § 2241. Respondents filed an answer, ECF No. 34, and Petitioner filed a reply, ECF No. 35.

## I. BACKGROUND

**A.      Petition for Writ of Habeas Corpus**

The District Judge provided the following factual background and summary of Petitioner's petition for writ of habeas corpus:

Petitioner A.A.M. is a 30-year-old citizen and national of Somalia. (Doc. No. 1 at 7; Doc. No. 2 at ¶ 1.) In May 2024, Petitioner was forced to flee his home in Mogadishu, Somalia, after he was shot in an altercation with members of Al-Shabaab, a "militant terrorist organization closely affiliated with Al-Qaeda." (Doc. No. 1 at 7.) After passing through several countries, Petitioner entered the United States through the southern border on August 15, 2024. (Doc. No. 1 at 8; Doc. No. 2 at ¶¶ 10, 12.) Shortly after entering the United States, Petitioner was arrested by

1

government officers and taken into custody. (Doc. No. 1 at 23; Doc. No. 2 at ¶ 12.) Defendant was brought to the Golden State Annex Detention Facility, where he has been detained ever since. (Doc. No. 1 at 23; Doc. No. 2 ¶ 12.)

At the time Petitioner entered the United States during the Biden Administration, there was a DHS rule in effect called the Circumvention of Lawful Pathways Final Rule, under which individuals who entered the United States without inspection and through a country other than their origin country were presumptively ineligible for asylum. (Doc. No. 1 at 12) (citing 88 Fed. Reg. 31314; 8 C.F.R. § 208.33(a)). Because Petitioner is a native of Somalia and entered through the southern border, he was not eligible for asylum. (Doc. No. 1 at 12.)

On September 12, 2024, DHS served Petitioner with a Notice to Appear at removal proceedings charging petitioner as removable under the Immigration and Nationality Act ("INA"). (Doc. No. 1 at 23; Doc. No. 2-3 at 2.) On March 19, 2025, an Immigration Judge ordered Petitioner to be removed to Somalia but granted Petitioner withholding of removal under 8 U.S.C. § 1231 due to the likelihood that if Petitioner returned, he would be tortured and/or persecuted based on a protected status related to imputed political opinion.4 (Doc. No. 1 at 23-24; Doc. 2-4.) The deadline to appeal that order expired on April 18, 2025, making the March 19, 2025 order final. (Doc. No. 2-4 at 5.)

On November 7, 2025, Petitioner filed the pending petition for a writ of habeas corpus raising the following claims: (1) violation of the INA, 8 U.S.C. § 1231(a)(6) based on unreasonable detention; (2) violation of the INA, 8 U.S.C. § 1231(a)(6) based on third country removal procedures; and (3) violation of the Due Process Clause of the Fifth Amendment to the U.S. Constitution based on both unreasonable detention and third country removal procedures. (Doc. No. 1 at 36–37.)

ECF No. 17, pgs. 4-5.

### B.   **Procedural History**

Along with the petition, Petitioner filed a motion for preliminary injunction, ECF No. 3, and subsequently filed a motion for temporary restraining order, ECF No. 6. On December 4, 2025, the District Judge granted in part Petitioner's motion for a temporary restraining order, ordering:

The court temporarily enjoins respondents and their officers, agents, servants, employees, and persons acting on their behalf in concert or in participation with them, from removing Petitioner to Cameroon without first allowing him a meaningful opportunity to be heard on his fear based claim before an immigration judge in compliance with due process.

Respondents and their officers, agents, servants, employees, and persons acting on their behalf in concert or in participation with them, are temporarily enjoined from removing or deporting Petitioner to a third country, including Cameroon, absent court order to the contrary.

ECF No. 17, pgs. 20-21 (bullet lettering omitted).

///

///

2

The District Judge subsequently granted in part Petitioner's motion for preliminary injunction, on similar terms, ordering:

> Respondents and their officers, agents, servants, employees, and persons acting on their behalf in concert or in participation with them, are enjoined from removing Petitioner via a third-country deportation to any country, including, but not limited to Cameroon, without providing him and his counsel meaningful notice and opportunity to assert a fear-based claim for relief from removal:
> A minimum of ten (10) days to raise a fear-based claim for relief from removal to the identified country;
> If Petitioner does assert a fear-based claim for relief from removal, Petitioner may not be removed to the third country without first providing him a meaningful opportunity to be heard on his fear-based claim before an immigration judge in compliance with due process . . .

ECF No. 19, pg. 13 (bullet lettering omitted).

However, the District Judge denied Petitioner's motion for preliminary injunction as to immediate release, finding Petitioner failed to establish a likelihood of success on the merits of the Zadvydas claim, citing Prieto-Romero v. Clark, 534 F.3d 1053 (9th Cir. 2008). See ECF No. 19, pg. 7.

On January 12, 2026, Petitioner filed a motion for order to show cause and extension of time to file a reply in support of petition. See ECF No. 22. Petitioner requested "a declaration clarifying the status of their previously noticed removal of A.A.M. to third-country Cameroon" pursuant to Federal Rule 7. See id. at 2. The undersigned ordered Respondents to "show cause within seven (7) days of this order, why the undersigned should not recommend granting the petition on the merits for failure to show there is significant likelihood of Petitioner's removal in the reasonably foreseeable future," by addressing specific questions. ECF No. 27, pgs. 6-7. Respondents filed a response, ECF No. 27, Petitioner filed a reply, ECF No. 32, Respondents filed two status updates, ECF Nos. 30 and 31, and Petitioner filed a response to ECF No. 30, ECF No. 32. Based on those status updates, the undersigned found the matter was ready to be briefed on the merits and therefore directed Respondents to file an answer/return and Petitioner to file a traverse/reply. See ECF No. 33. Parties timely filed responses. See ECF Nos. 34 and 35.

On March 30, 2026, the undersigned issued findings and recommendations recommending the petition for writ of habeas corpus be granted in part and denied in part, specifically that it be granted as to Petitioner's claims regarding third country removal and denied

as to Petitioner's Zadvydas claim. See ECF No. 36. Parties filed timely objections, ECF Nos. 37 and 38. In light of those objections, the undersigned will vacate the prior findings and recommendations and issue these amended findings and recommendations.

### C.    **Respondents' Answer**

Respondents contend that Petitioner's first claim, Violation of 8 U.S.C. § 1231(a)(6), should be denied because Petitioner's removal is reasonably foreseeable as Cameroon has accepted noncitizens, like Petitioner, "'who are citizens or former residents of other countries in Africa, including Somalia.'" ECF No. 34, pgs. 4 (quoting Deporatation Officer Guerra's Declaration, ECF No. 34-5, pg. 2). According to Respondents, "[t]he only thing preventing Petitioner's removal to Cameroon is his pursuit of his application for asylum and for withholding of removal to that country." Id. Next, Respondents contend that Petitioner's second claim, violation of 8 U.S.C. § 1231(a)(6), should be denied because "because Petitioner is currently being afforded the right to assert a fear-based claim for relief from removal to Cameroon." Id. Respondents assert that "Petitioner has filed a Form I-589 applying for asylum and for withholding of removal to Cameroon, and the merits of that application will be adjudicated at a hearing before an immigration judge on April 16, 2026." Id. at 5. Finally, Respondents argue that Petitioner's third claim, violation of Due Process, should be denied because "[t]his claim duplicates Counts I and II and therefore should be denied or dismissed as moot." Id.

### C.    **Petitioner's Reply**

Petitioner argues that Respondents' characterization that Petitioner is being provided the requested process and therefore, such claims are moot, is incorrect because "'Respondents do not address why the relief provided to Petitioner relating to his removal proceedings to Cameroon should not be applied to other third-countries that Respondents may identify if Petitioner is not removed to Cameroon.'" ECF No. 35, pg. 2 (quoting ECF No. 19 at 10). Petitioner additionally asserts that "Respondents' arguments relating to a possible removal to Cameroon are not nearly enough to justify keeping A.A.M. in civil ICE detention, let alone under deplorable conditions." Id. at 3. Petitioner contends that Respondents do not provide sufficient information about the government's repatriation agreement with Cameroon, including "the

number of immigrants who might be accepted, timeframe for acceptance, criteria for acceptance, or status upon removal." Id. Petitioner argues that given the process afforded to him, removal is not likely in the reasonably foreseeable future, and it is unclear whether any agreement with Cameroon to repatriate immigrants will still be in effect at the conclusion of such process. See id.

## II. DISCUSSION

The undersigned finds that Petitioner's removal to a third country without certain procedural protections would violate Petitioner's due process rights and will recommend granting the petition as to Claim Two. The undersigned will therefore recommend the preliminary injunction previously ordered, ECF No. 19, be converted into a permanent injunction. However, the undersigned finds that Petitioner cannot yet show that he is "stuck in a 'removable-but-unremovable limbo,'" to establish he is entitled to relief under Zadvdas. Prieto-Romero, 534 F.3d at 1063. Thus, the undersigned will recommend the petition be denied without prejudice as to Claim One. Based on these conclusions, the undersigned finds Petitioner's third claim for relief, that Petitioner's detention violates due process, is moot and will therefore recommend it be denied as moot.

### A.    Likelihood of Removal

When the Government wants to remove a noncitizen,[1] the normal path is through removal proceedings, which require an evidentiary hearing before an immigration judge. 8 U.S.C. § 1229(a). In the removal proceeding, the Immigration Judge determines both whether a noncitizen may be removed and to what country or countries he may be removed. 8 C.F.R. § 1240.12(d) ("When a respondent is ordered removed from the United States, the immigration judge shall identify a country, or countries in the alternative, to which the alien's removal may in the first instance be made, pursuant to [8 U.S.C. § 1231(b)(2)].") Section 1231(b)(2) requires that the immigration judge prioritize removal to countries as follows:

(1) An alien shall be removed to the country of his choice (subparagraphs

---

[1] The court prefers the term "noncitizen" to "alien." Because the regulatory language at issue frequently uses the term "alien," the court will use the terms interchangeably in this order.

(A) to (C)), unless a condition eliminating that command is satisfied; (2) otherwise he shall be removed to the country of which he is a citizen (subparagraph (D)), unless a condition eliminating that command is satisfied; (3) otherwise he shall be removed to a country with which he has a lesser connection (subparagraph (E), clauses (i) to (vi), including the country of his birth (clause (iv))); or (4) if that is "impracticable, inadvisable, or impossible," he shall be removed to another country whose government will accept him (subparagraph (E), clause (vii)).

Jama v. Immigr. and Customs Enf't, 543 U.S. 335, 341 (2005) (citing 8 U.S.C. § 1231(b)(2)).

If the U.S. Department of Homeland Security (DHS) is "unable to remove the alien to the specified or alternative country or countries, the order of the immigration judge does not limit [DHS's authority] to remove the alien to any other country as permitted by [8 U.S.C. § 1231(b)]." 8 C.F.R. § 1240.12(d). Removal to countries identified outside of removal proceedings are referred to as "third country removals." Notwithstanding DHS's authority to effectuate third country removals, noncitizens may not be removed to countries where, as potentially relevant here, their "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion," (referred to as "withholding of removal"), or where "it is more likely than not that [the noncitizen] would be tortured if removed to the proposed country of removal" (referred to as the "Convention Against Torture" (CAT)). 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16. Both withholding of removal and the CAT provide mandatory protections from removal to the country or countries where the noncitizen is more than likely to be persecuted or tortured. 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16.2 While DHS has the authority to remove a noncitizen to a country not identified in the final removal order, there is no statute or regulation providing a specific procedure to effectuate such a third country removal. See Aden v. Nielsen, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019).

After a noncitizen is ordered removed, ICE "shall remove the alien from the United States within a period of 90 days . . . ." (the "removal period"). 8 U.S.C. § 1231(a)(1)(A). The removal period begins, as relevant here, on the "date the order of removal becomes administratively final." Id. § 1231(a)(1)(B)(i). ICE is required to detain the noncitizen during the removal period. § 1231(a)(2). If the noncitizen is not removed during the removal period, ICE

6

"may" continue to detain the noncitizen after the removal period if he falls into certain categories, including that he entered "the United States without being admitted or paroled," or arrived "in the United States at any time or place other than as designated by the Attorney General." §§ 1231(a)(6), 1182(a)(6)(A)(i). Although there is no explicit statutory limit to the period for which a noncitizen may be detained following the removal period, in Zadvydas the Supreme Court noted that a "statute permitting indefinite detention of an alien would raise a serious constitutional problem" under the Fifth Amendment Due Process Clause. Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Accordingly, the Supreme Court held that after a presumptively reasonable six-month period of post-removal period detention,

> once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id. at 701.

The Ninth Circuit considered whether a noncitizen was eligible for relief pursuant to Zadvydas in Prieto-Romero, concluding:

> Although his removal has certainly been delayed by his pursuit of judicial review of his administratively final removal order, he is not stuck in a "removable-but-unremovable limbo," as the petitioners in Zadvydas were. See Jama v. Immigration and Customs Enforcement, 543 U.S. 335, 347, 125 S. Ct. 694, 160 L. Ed. 2d 708 (2005). Here there is no evidence that Prieto-Romero is unremovable because the destination country will not accept him or his removal is barred by our own laws. Cf. Zadvydas, 533 U.S. at 697. To the contrary, the government introduced evidence showing that repatriations to Prieto-Romero's country of origin, Mexico, are routine and that the government stands ready to remove Prieto-Romero as soon as judicial review is complete. Prieto-Romero does not dispute this evidence . . .

Prieto-Romero, 534 F.3d at 1063.

Thus, the Ninth Circuit concluded Prieto-Romero was ineligible for relief under to Zadvydas, because he failed to establish he was stuck in the "removable-but unremovable-limbo" considering: (1) there is a country where Prieto-Romero can be removed to that will accept him and does not violate our laws and (2) that the government has taken the steps to demonstrate they

7

are in a position to effectuate Prieto-Romero removal.

The undersigned agrees with Petitioner that the evidence Respondents provided does not establish that the government has taken the necessary steps to prepare to effectuate Petitioner's removal. In Prieto-Romero, the Ninth Circuit found that

> repatriations to Prieto-Romero's country of origin, Mexico, are routine and that the government stands ready to remove Prieto-Romero as soon as judicial review is complete. Prieto-Romero does not dispute this evidence but urges us to conclude that his detention is statutorily unauthorized under Zadvydas because the government cannot demonstrate to any degree of certainty when Prieto-Romero's judicial review will end.

> Id.

The undersigned finds that the government has failed to establish that repatriations to Cameroon are routine and the government "stands ready to remove" Petitioner upon a finding that Petitioner is removable to Cameroon. Further, Respondents failed to show that Cameroon is willing to accept Petitioner. Indeed, Respondents contend that "the government does not generally engage with other sovereigns on the question of third country removal until the point in time that there is a final, executable order of removal." ECF No. 28, pg. 3. Thus, according to Respondents, the process to request that Cameroon accept Petitioner will not begin until the conclusion of the adjudication of Petitioner's fear-based claim for withholding.

In the objections to findings and recommendations, Petitioner argues that, even if the April 16, 2026, hearing resulted in the immigration judge ordering Petitioner be removed to Cameroon, Petitioner would exercise his right to appeal such decision in accordance with 8 C.F.R. § 1003.1(b)(9) and 8 U.S.C. § 1252(b). See ECF No. 38, pg. 8. Petitioner contends that such process could take up to a year and given Petitioner has been detained since August 15, 2024, this could result in Petitioner being detained for "years of additional civil detention." Id.

The undersigned finds addressing the merits of Petitioner's fear-based claim for removal to Cameroon is not appropriate nor necessary to determine whether Petitioner's removal is reasonably foreseeable and instead considers the potential outcomes: either Petitioner is granted withholding from removal to Cameroon and Respondents must identify another third-country to remove Petitioner to, seek approval from that country, and acquire travel documents to effectuate

8

Petitioner's removal, or Petitioner is denied withholding and appeals the decision.

Respondents do not provide sufficient information to establish that if Petitioner is granted withholding, his removal is reasonably foreseeable because Respondents provide no information about how long it may take to identify a new country, receive approval from such country and obtain travel documents for Petitioner. This timeline may be extended further if Petitioner raises a fear-based claim for removal to that newly identified country. In the other scenario, if Petitioner is not granted withholding, Petitioner's appeal of such decision may take another year, and, if Petitioner lost the appeal, Respondents fail to provide any information about how long it might take to receive approval from Cameroon to accept Petitioner and obtain travel documents for Petitioner. If Petitioner won the appeal, Petitioner would be subject to an indefinite timeline in which Respondents must identify a new country for removal, and the process necessary to effectuate such removal. Accordingly, the undersigned finds Respondents fail to establish that Petitioner's removal is reasonably foreseeable, regardless of the outcome of the April 16, 2026, hearing.

By the time of Petitioner's April 16, 2026, hearing, Petitioner will have been in detention for 610 days, or just over 20 months. In other words, Respondents have had 610 days to effectuate Petitioner's removal. Respondents were ordered to provide Petitioner the opportunity to present his fear-based claim of removal to Cameroon on December 19, 2025, ECF No. 19, and, assuming the hearing occurs on April 16, 2026, took almost four months (119 days or 3 months and 29 days) to provide such process. Respondents argue that because they were previously ready to remove Petitioner to Cameroon and the government provided notice of removal to Cameroon, it is not "clear what additional steps the government would need to take" to show they have taken the necessary steps to effectuate Petitioner's removal. ECF No. 37, pg. 2. According to Respondents, following notice of intent to remove to a third country, "[i]t is then incumbent on the government to proceed with such removal expeditiously, which in this case, the record establishes, it would have." Id. at 3. The undersigned disagrees that Respondents have shown they have taken the necessary steps to effectuate Petitioner's removal expeditiously. The undersigned identified a number of steps Respondents could have taken to show they stand ready to remove

Petitioner to Cameroon, specifically confirming that Cameroon is willing to accept Petitioner and efforts to obtain travel documents for Petitioner to be removed to Cameroon. Further, Respondents took almost four months to provide Petitioner with the process ordered by this Court. Such a delay in providing this process does not show that Respondents have acted expeditiously. As the Supreme Court instructed in Zadvydas, "as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Zadvydas, 533 U.S. at 701.  The undersigned finds that Petitioner's detention already "exceeds a period reasonably necessary to secure removal," and "removal is not reasonably foreseeable" and Petitioner's release "may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." Id. at 699-700 (citing 8 U.S.C. §§ 1231(a)(3), 1253 (1994 ed., Supp. V); 8 CFR § 241.5 (2001)).

Thus, the undersigned will recommend granting the petition because Respondents fail to show there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future. The undersigned will further recommend that Petitioner therefore be released immediately, under conditions prescribed pursuant to 8 U.S. Code § 1231(a)(3) and (7), which provides the process for supervision of noncitizens who are released from detention because they were not removed within the 90-day removal period.

**B.      Third Country Removal**

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." Trump v. J.G.G., 604 U.S. 670, 673 (2025) (citation omitted); see also Zadvydas, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

The Due Process Clause applies to noncitizens in the country in connection with removal proceedings, even if their presence is unlawful or temporary. See Zadvydas, 533 U.S. at

10

693; Andriasian v. Immigr. and Naturalization Servs., 180 F.3d 1033, 1041 (9th Cir. 1999) ("Failing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process."). This right to due process applies equally to the initial removal determination and determination of removal withholding relief to an identified third country. Johnson v. Guzman Chavez, 594 U.S. 523, 557 (2021) (Breyer, J., dissenting) ("[A]ll here agree that the aliens are legally entitled to seek [] withholding-only relief."); A.A.M., 2025 WL 3485219 at *11 ("Due process requires that Petitioner receive a full and fair hearing of his fear-based claim in front of a neutral adjudicator.").

Joining numerous other courts, and the District Judge's prior determination in this case, the undersigned finds that ICE's policy for third-country removals is incompatible with Ninth Circuit law and violates due process because it currently provides little to no notice of the country to which a noncitizen is to be removed and no meaningful opportunity to raise a fear-based claim. See Vishal v. Chestnut, No. 1:25-CV-01469-SAB-HC, 2025 WL 3511815, at *6 (E.D. Cal. Dec. 8, 2025) (noting "[m]ultiple courts have found the government's third country removal policy violates due process and is contrary to Ninth Circuit precedent" and concurring (citing cases)); Giebashvili v. Noem, No. 25-cv-3432 BJC VET, 2026 WL 114422, at *3 (same) (collecting cases); Nguyen, 796 F. Supp. 3d at 728 ("It would be impossible to comply both with Ninth Circuit precedent and the policy." (citing Andriasian, 180 F.3d at 1041; Aden v. Nielsen, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019)); A.A.M. v. Andrews, No. 1:25-CV-01514-DC-DMC (HC), 2025 WL 3485219, at *8 (E.D. Cal. Dec. 4, 2025) ("the court finds Petitioner has a protected liberty interest in having an immigration judge review USCIS's determination on his fear-based claim regarding removal to [a third country].").

The undersigned further finds that "the risk of removal without due process itself constitutes a concrete injury," Daneshfar v. Facility Adm'r, No. C25-1708 DGE MLP, 2025 WL 4037745, at *3 (W.D. Wash. Dec. 16, 2025); Esmail v. Noem, No. 2:25-cv-8325 WLH RAO, 2025 WL 3030589, at *5 (C.D. Cal. Sept. 26, 2025), and that actual removal without notice or

11

meaningful process is an injury that cannot be remedied once removal occurs, see Louangmilith v. Noem, 808 F. Supp. 3d 1139, 1145 (S.D. Cal. 2025) (once a noncitizen is removed without notice or opportunity to be heard "it will be too late for the individuals to meaningfully challenge the removal").

Respondents request that the preliminary injunction not be converted to a permanent injunction, arguing "the USCIS asylum procedure is constitutionally adequate." ECF No. 37, pg. 3. However, the District judge previously found that "the DHS Third Country Removal Policy does not provide any opportunity for Petitioner to appeal to an immigration judge the USCIS officer's determination that he did not have a credible fear-based claim." ECF No. 17, pg. 14. The District Judge distinguished this from the process affirmed in Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 138-141 (2020), where a credible-fear claim is presented to an asylum officer at the first instance and "rejection of a credible-fear claim is reviewed by a supervisor and may then be appealed to an immigration judge." 591 U.S. at 103. Accordingly, the District Judge issued a temporary restraining order, and then preliminary injunction, ordering:

> Respondents and their officers, agents, servants, employees, and persons acting on their behalf in concert or in participation with them, are enjoined from removing Petitioner via a third-country deportation to any country, including, but not limited to Cameroon, without providing him and his counsel meaningful notice and opportunity to assert a fear-based claim for relief from removal:
> A minimum of ten (10) days to raise a fear-based claim for relief from removal to the identified country;
> If Petitioner does assert a fear-based claim for relief from removal, Petitioner may not be removed to the third country without first providing him a meaningful opportunity to be heard on his fear-based claim before an immigration judge in compliance with due process . . .

ECF No. 19, pg. 13.

Respondents argue that "the due process clause does not require that Petitioner receive the gold standard of an adversarial proceeding with written and oral argument and written findings by the immigration judge." ECF No. 37, pg. 3. However, the undersigned finds this mischaracterizes the District Judge's order. Further, Respondents fail to provide any authority to support their claim or rebut the District Judge's findings. Indeed, Respondents rely on Thuraissigiam to argue that immigration officers are sufficient neutral decisionmakers, id. at 4, and do not respond to the District Judge's finding that even in Thuraissigiam, the process allowed

12

for review by an immigration judge on appeal. The undersigned finds that Petitioner is therefore entitled to relief on this ground and will recommend that Respondents be enjoined from removing Petitioner to a third country without first providing adequate notice and an opportunity to raise a fear of removal. Thus, the undersigned will recommend that the preliminary injunction ordered by the District Judge, ECF No. 19, be converted into a permanent injunction, and Respondents be ordered to provide Petitioner with such process to the extent the government seeks to remove Petitioner to a third country.

### III. CONCLUSION

Based on the foregoing, the undersigned orders and recommends:

1.    It is ORDERED that the findings and recommendations issued March 30, 2026, ECF No. 36, are VACATED;

2.    It is RECOMMENDED that the petition for writ of habeas corpus, ECF No. 1, be GRANTED;

3.    It is RECOMMENDED that Respondents be ordered to IMMEDIATELY RELEASE PETITIONER under conditions prescribed pursuant to 8 U.S. Code § 1231(a)(3) and (7);

4.    It is RECOMMENDED that the preliminary injunction ordered in ECF No. 19, be converted into a PERMENANT INJUNCTION;

5.    Accordingly, it is RECOMMENED that Respondents and their officers, agents, servants, employees, and persons acting on their behalf in concert or in participation with them, be enjoined from removing Petitioner via a third-country deportation to any country, without providing him and his counsel meaningful notice and opportunity to assert a fear-based claim for relief from removal: A minimum of ten (10) days to raise a fear-based claim for relief from removal to the identified country;

6.    It is RECOMMENED that if Petitioner does assert a fear-based claim for relief from removal, Petitioner may not be removed to the third country without first providing him a meaningful opportunity to be heard on his fear-based claim before an immigration judge in

13

compliance with due process.

7.    It is RECOMMENDED that Petitioner's motion for order to show cause and extension of time, ECF No. 22, be DENIED AS MOOT.

///

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  Thus, within 7 days after being served with these findings and recommendations, any party may file written objections with the Court.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  April 14, 2026

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

14